**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jean Joseph DEEB, Defendant–Appellant.**

No. 91–5253.

United States Court of Appeals,
Eleventh Circuit.

Feb. 15, 1994.

Neal R. Lewis, Miami, FL, Terence J. Anderson, The University of Miami School of Law, Coral Gables, FL, for defendant-appellant.

Laurence M. Barfeld, Linda Collins Hertz, Carol Herman, Miami, FL, for plaintiff-appellee.

Before CARNES, Circuit Judge, FAY[*] and JOHNSON, Senior Circuit Judges.

[*] *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

CARNES, Circuit Judge:

Jean Joseph Deeb was convicted of importation and possession of cocaine. At his trial, the evidence against him included testimony that a co-conspirator had given at a prior trial at which Deeb was neither present nor represented. We conclude that the testimony from the prior trial was admissible under the residual hearsay exception and that its admission did not violate the Confrontation Clause. Accordingly, we affirm Deeb's conviction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In August 1988, agents of the United States Customs Service inspected a coastal freighter that had recently arrived from Haiti at a Miami shipyard. They discovered a substantial quantity of cocaine in the freighter's forward ballast tanks. Assisted by agents of the United States Drug Enforcement Agency (DEA), Customs agents kept the freighter under continuous surveillance. They observed the freighter's crew transferring boxes from the freighter to a van. Agents followed the van to a duplex in northwest Miami where they saw two individuals unload some of the boxes and carry them into the duplex. The van, with the remaining boxes, was left parked outside.

The agents watched the duplex, the van, and any individual who had contact with either. Later, as several individuals attempted to leave with the van, the agents arrested seven individuals who had had significant contact with the van and the boxes. Deeb and Serge Biamby were among those arrested. The agents found a total of approximately 491 kilograms of cocaine in the boxes.

On August 31, 1988, a grand jury issued an indictment against all seven of those arrested. Deeb and Biamby were charged with knowingly and intentionally importing and conspiring to import cocaine, in violation of 21 U.S.C. §§ 952(a), 960(a)(1) and (b), 963, and 18 U.S.C. § 2, and with knowingly and intentionally possessing with intent to distribute and conspiring to possess with intent to distribute cocaine, in violation of 21 U.S.C.

§§ 841(a)(1), 846, and 18 U.S.C. § 2. The other five individuals were charged with related crimes arising from the same facts. Biamby and two other defendants agreed to cooperate with the Government. Biamby pled guilty to one count of importing cocaine, in exchange for which the prosecutor agreed to dismiss the remaining charges against him and agreed that his cooperation could be used as a basis for a downward departure at sentencing. Biamby was later sentenced to five years imprisonment and five years of supervised release.

Deeb and the remaining defendants were scheduled to stand trial in July 1989, but Deeb failed to appear. The Government moved to try him *in absentia.* The district court denied the motion, severed the charges against Deeb, and proceeded with the trial against the remaining defendants. Biamby testified at that trial. Neither Deeb nor his counsel was present for any part of that trial.

In February 1990, authorities apprehended Deeb in the Dominican Republic and brought him to Miami for trial. Two months later the Government disclosed that Biamby was terminally ill with AIDS and was suffering progressive memory deterioration. The Government moved for permission to depose Biamby on videotape for the purpose of introducing the tape at Deeb's trial. Over Deeb's objection, the district court authorized the deposition, which was held on May 24, 1990. At the deposition, the Government questioned Biamby about Deeb's involvement in the crime, and Deeb, through counsel, cross-examined Biamby. On July 3, 1990, the Government filed a memorandum indicating that it would move at Deeb's trial to admit Biamby's testimony from the trial of the codefendants in July 1989.

Deeb was tried in December 1990. As part of its case against Deeb, the Government showed Biamby's videotaped deposition to the jury. Deeb did not object to the introduction of the videotaped deposition and, in this appeal, does not contend that its admission was erroneous. During the presentation of its case against Deeb, the Government moved to introduce Biamby's direct-examination testimony from the July 1989 trial of the codefendants, and over Deeb's objection, the district court admitted that testimony. Because neither the Government nor Deeb moved to introduce Biamby's cross-examination testimony from the former trial, that testimony was not admitted.

After the close of the evidence, the jury found Deeb guilty. The district court sentenced him to 270 months imprisonment and ten years of supervised release.

## II. STANDARD OF REVIEW

■ This Court reviews a district court's admission of former testimony for abuse of discretion. *United States v. Lang,* 904 F.2d 618, 624 (11th Cir.), *cert. denied,* 498 U.S. 924, 111 S.Ct. 305, 112 L.Ed.2d 258 (1990).

## III. DISCUSSION

The district court relied on Fed.R.Evid. 801(d)(1)(B), 804(b)(1), and 804(b)(5) as authority for allowing the Government to introduce Biamby's former testimony. Deeb argues that Biamby's testimony was not admissible under any of these rules and that its admission violated his rights under the Sixth Amendment's Confrontation Clause. We will address Deeb's evidentiary and constitutional challenges in turn.

### A. RULE 801(d)(1)(B)

■ The district court apparently accepted the Government's argument that Biamby's former testimony was admissible at Deeb's trial under Rule 801(d)(1)(B) as a prior statement by Biamby that was consistent with his deposition testimony and that was offered to rebut Deeb's express charge of "recent fabrication or improper influence or motive." Rule 801(d)(1)(B) provides:

(d) **Statements which are not hearsay.** A statement is not hearsay if—

(1) **Prior statement by witness.** The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive....

Even assuming that the admission of Biamby's deposition testimony satisfied the requirement that Biamby "testif[y] at the tri-

al," and that his former testimony was offered to rebut a charge of "recent fabrication or improper influence or motive," we conclude that it still was not admissible under Rule 801(d)(1)(B). That rule requires that Biamby have been "subject to cross-examination concerning the statement," and "the statement" in this case was the former trial testimony. The rule envisions a situation where the hearsay declarant is available at trial (or as here, at deposition) to be cross-examined about his prior consistent statement when it is introduced. Such a situation never arose in this case. Neither the Government nor Deeb questioned Biamby at the deposition about his former testimony, probably because at the time, the Government had not expressed any intention of offering Biamby's former testimony at Deeb's trial. The Government stated at oral argument that it did not decide to offer Biamby's former testimony until after it had taken his deposition, and nothing in the record indicates otherwise. The Government did not notify Deeb of its intention until five weeks after the deposition had been completed, too late for Deeb to cross-examine Biamby about the former trial testimony. Because Biamby was not subject to cross-examination about his former testimony and because the declarant being "subject to cross-examination concerning the statement" is a predicate for admission under Rule 801(d)(1)(B), that rule cannot justify admission of Biamby's former testimony.

### B. RULE 804(b)(1)

■ The district court also relied on Rule 804(b)(1) as authority for admitting Biamby's former testimony at Deeb's trial. That rule provides:

> **(b) Hearsay exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> **(1) Former testimony.** Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the' testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to devel-

op the testimony by direct, cross, or redirect examination.

Rule 804(b)(1) clearly requires that Deeb have had an opportunity to cross-examine Biamby at the codefendants' trial. Deeb had no such opportunity.

The district court concluded that the cross-examination of Biamby by Deeb's codefendants satisfied the requirement that Deeb have had an opportunity to cross-examine Biamby. That conclusion is contrary to the plain words of the rule that condition admissibility upon "the party against whom the testimony is now offered" having had an opportunity to develop the testimony through cross-examination or otherwise. At least as to criminal cases, Rule 804(b)(1) neither states nor implies that it is sufficient that another party with similar interests cross-examined the witness at the prior trial. The Government has not cited any decision of any court so construing the rule, and absent controlling authority, we will not place upon the rule a construction contrary to its plain wording. *See, e.g., North Dakota v. United States*, 460 U.S. 300, 312, 103 S.Ct. 1095, 1102, 75 L.Ed.2d 77 (1983); *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). Thus, because Deeb had no opportunity to develop Biamby's former testimony through cross-examination, Rule 804(b)(1) did not authorize admission of that testimony.

■ The Government contends that by fleeing before the trial in July 1989, Deeb waived his right to cross-examine Biamby. Deeb contends that the Government's argument is contrary to the Supreme Court's recent holding in *Crosby v. United States*, —— U.S. ——, 113 S.Ct. 748, 122 L.Ed.2d 25 (1993). In *Crosby*, the Court unanimously held that Fed.R.Crim.P. 43 prohibits the trial *in absentia* of a defendant not present at the beginning of the trial, because the Court was unwilling to impute to a defendant who flees before trial the knowledge that he was waiving his right to be present at trial. *Id.* —— U.S. at ——, 113 S.Ct. at 752. Deeb contends that under the Court's reasoning in *Crosby*, it would be impossible to impute to a defendant the knowledge that by fleeing be-

fore trial, he had waived his right recognized by Rule 804(b)(1) to cross-examine the witnesses against him. We agree.[1]

## C. RULE 804(b)(5)

■ The district court suggested that Biamby's former testimony was admissible under the residual hearsay exception in Rule 804(b)(5), which provides for admission of hearsay statements satisfying the following requirements:

> (5) **Other exceptions.** A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

Deeb contends that Rule 804(b)(5) cannot authorize admission of Biamby's former testimony because Biamby's former testimony is not "a statement not specifically covered by any of the foregoing exceptions." Deeb contends that Biamby's former testimony is "specifically covered by" Rule 804(b)(1) but is not admissible under that rule. Deeb's position has been characterized elsewhere as the "near-miss argument," which maintains that a hearsay statement that is close to, but that does not fit precisely into, a recognized hearsay exception is not admissible under Rule 804(b)(5). *See Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 505 F.Supp. 1190, 1262–63 (E.D.Pa.1980), *aff'd in part on other grounds and rev'd in part, In re Japanese Elec. Products Antitrust Litig.*, 723 F.2d 238, 302 (3d Cir.1983), *rev'd on other grounds, Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 580, 106 S.Ct. 1348, 1352, 89 L.Ed.2d 538 (1986).

This Court rejected the near-miss argument in *United States v. Fernandez*, 892 F.2d 976, 981 (11th Cir.1990), *cert. dismissed*, 495 U.S. 944, 110 S.Ct. 2201, 109 L.Ed.2d 527 (1990). In *Fernandez*, we addressed the propriety of admitting grand jury testimony under Rule 804(b)(5). *See* 892 F.2d at 980–84. The district court had relied on that rule in permitting the government to introduce, at the defendants' trial, the testimony of a witness who had died from natural causes five months after testifying before the federal grand jury that had indicted the defendants. *Id.* at 980. On appeal from their convictions, the defendants contended that grand jury testimony is never admissible under Rule 804(b)(5) because it is not "[a] statement not specifically covered by any of the foregoing exceptions." *Id.* at 981. They argued that grand jury testimony satisfies the definition of former testimony in Rule 804(b)(1) and, therefore, is a statement "specifically covered by" Rule 804(b)(1), even if it is not admissible under that rule because the defendants had no opportunity to cross-examine the witness at the grand jury proceeding. *Id.* This Court rejected the defendants' argument, stating:

> We decline to rally behind appellants' call for a *per se* ban on the admission of grand-jury testimony under the residual exception. If a statement does not satisfy all of the requirements of Rule 804(b)(1), then it is not a statement "covered by [one] of the foregoing exceptions" within the meaning of Rule 804(b)(5). We consider admissible those statements that are similar though not identical to hearsay clearly falling under one of the four codified exceptions, if the statements otherwise bear indicia of trustworthiness equivalent to those exceptions. The contrary reading would create an arbitrary distinction between hearsay statements that narrowly,

---

1. We express no opinion about whether the waiver question might be answered differently if Deeb had fled in order to gain a strategic advantage from the death of an ailing witness. The Government has conceded that there is no evidence to indicate that when he fled Deeb knew that Biamby was dying.

but conclusively, fail to satisfy one of the formal exceptions, and those hearsay statements which do not even arguably fit into a recognized mold. If the proponent can show that a particular piece of hearsay carries "circumstantial guarantees of trustworthiness" equivalent to one of the four codified exceptions, that statement should be admissible regardless of its affinity to a statement falling squarely within a codified exception.

*Id.* at 981 (footnote omitted).

The Fourth Circuit recently relied on our *Fernandez* decision in rejecting a defendant's near-miss argument against admission under Rule 804(b)(5) of suppression-hearing testimony which, like grand jury testimony, is a type of former testimony dealt with in Rule 804(b)(1). *See United States v. Clarke,* 2 F.3d 81 (4th Cir.1993). The *Clarke* court reasoned that " 'specifically covered' means exactly what it says: if a statement does not meet all of the requirements for admissibility under one of the prior exceptions, then it is not 'specifically covered.' " *Id.* at 83 (citing *Fernandez,* 892 F.2d at 981); *see also* Myrna S. Reader, *Confronting the Catch–Alls: Residual Clauses Also Benefit the Defense,* 6 Crim.Just. 31, 33 (1991) (concluding that the "not specifically covered" language of Rule 804(b)(5) has not been used to limit that exception to statements that are not addressed in another category). In light of *Fernandez,* we reject Deeb's near-miss argument.

Deeb's only other challenge to the admissibility of Biamby's former testimony under Rule 804(b)(5) is that it lacked the "equivalent circumstantial guarantees of trustworthiness" necessary for admission under that exception.[2] For reasons discussed below regarding the admissibility of Biamby's former testimony for purposes of the Confrontation Clause, we conclude that Biamby's former testimony possessed sufficient circumstantial guarantees of trustworthiness for admission under the residual hearsay exception. *Cf. United States v. Chapman,* 866 F.2d 1326, 1331 n. 1 (11th Cir.1989) ("[T]he contours of the hearsay rule and the Confrontation Clause are not wholly congruent. However, they clearly protect similar values, and thus analysis under the two provisions will unavoidably involve similar factors." (citations omitted)).

## D. THE CONFRONTATION CLAUSE

■ Deeb argues that the admission at his trial of Biamby's former testimony violated Deeb's rights under the Confrontation Clause of the Sixth Amendment. That Clause provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." U.S. Const. Amend. VI. The Clause accords criminal defendants a "constitutional right to cross-examine adverse witnesses." *Chapman,* 866 F.2d at 1330; *accord Ohio v. Roberts,* 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980). "However, the right to confrontation is not absolute." *Chapman,* 866 F.2d at 1330. The admission of hearsay against a defendant deprives the defendant of an opportunity to confront the declarant, but when such a statement satisfies two requirements, the absence of an opportunity for confrontation is not unconstitutional. *Roberts,* 448 U.S. at 64–65, 100 S.Ct. at 2538. The two requirements are, first, that the prosecution establish that the hearsay declarant is unavailable, *id.* at 65, 100 S.Ct. at 2538, and, second, that the prosecution establish that the hearsay statement bears the "indicia of reliability" necessary " 'to afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement.' " *Id.* at 65–66, 100 S.Ct. at 2539 (quoting *Mancusi v. Stubbs,* 408 U.S. 204, 213, 92 S.Ct. 2308, 2313, 33 L.Ed.2d 293 (1972) (citations omitted)). The second requirement reflects the purpose of the Confrontation Clause "to augment accuracy in the factfinding process by ensuring the defendant an effective means to test adverse evidence." *Id.* at 65, 100 S.Ct. at 2539.

---

**2.** Rule 804(b)(5) requires the proponent of a statement offered under that exception to provide the adverse party with notice "sufficiently in advance of the trial ... to provide the adverse party with a fair opportunity to prepare to meet it." Deeb did not object at trial to the adequacy of the Government's notice of its intention to offer Biamby's former testimony, nor has he raised any question about it on appeal.

■ The Supreme Court has determined that the indicia of reliability requirement is satisfied when the evidence at issue falls within one of the firmly rooted hearsay exceptions. *Id.* at 66, 100 S.Ct. at 2539. Assuming that no such exception applies here, we instead will decide whether Biamby's former testimony exhibited the indicia of reliability necessary for admission under the residual hearsay exception, Rule 804(b)(5).[3] The Supreme Court has stated that evidence offered under that exception is presumptively unreliable, *Lee v. Illinois,* 476 U.S. 530, 543, 106 S.Ct. 2056, 2063, 90 L.Ed.2d 514 (1986), and "must be excluded, at least absent a showing of particularized guarantees of trustworthiness." *Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539. Such particularized guarantees of trustworthiness must, like the circumstantial guarantees of trustworthiness necessary for admission under the hearsay exceptions, "be drawn from the totality of the circumstances that surround the making of the statement and that render the declarant particularly worthy of belief." *Idaho v. Wright,* 497 U.S. 805, 820, 110 S.Ct. 3139, 3149, 111 L.Ed.2d 638 (1990); *accord United States v. Accetturo,* 966 F.2d 631, 634 (11th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1053, 122 L.Ed.2d 360 (1993). Also, the Supreme Court has held that "evidence corroborating the truth of a hearsay statement" is not relevant to a finding of trustworthiness. *Wright,* 497 U.S. at 822, 110 S.Ct. at 3150.

The Government has pointed out three facts about Biamby's former testimony that it contends are guarantees of trustworthiness: Biamby gave the former testimony under oath; his testimony was self-inculpating; and his testimony was subject to cross-examination by Deeb's original codefendants.

■ As the Government acknowledges, the mere fact that a statement is made under oath is not enough to guarantee its trustworthiness. *See United States v. Lang,* 904 F.2d 618, 623 (11th Cir.), *cert. denied,* 498 U.S.

924, 111 S.Ct. 305, 112 L.Ed.2d 258 (1990). Likewise, the fact that Biamby's testimony was self-inculpating is no guarantee of trustworthiness under the circumstances. Though self-inculpating, Biamby's testimony was not against his interest because, at the time he testified, Biamby had already pled guilty to one count of conspiracy to import cocaine and, in exchange for his cooperation with the prosecution of his alleged co-conspirators, the Government had agreed to dismiss the remaining counts against Biamby and to use his cooperation as a basis for a downward departure at sentencing. Biamby had a strong motive to testify in a manner that would win him favor with the Government, and he could achieve that goal by inculpating Deeb as the principal conspirator in the cocaine importation scheme. *Cf. United States v. Gonzalez,* 559 F.2d 1271, 1273 (5th Cir.1977) (holding that the pressure put on a co-conspirator, who had been convicted and granted immunity from further prosecution, to testify before a grand jury that indicted the defendant, made the giving of the testimony in the co-conspirator's best interest and therefore not a statement against interest). As the Sixth Circuit has stated:

> A long line of Supreme Court cases interpreting the Confrontation Clause has created a strong presumption against the trustworthiness of co-conspirators' statements that are made after the conspiracy has terminated in arrest.... Due to a co-conspirator's "strong motivation to implicate the defendant and to exonerate himself," a co-conspirator's statements about the defendant's involvement in the crime should be viewed with "special suspicion." This suspicion stems from the "reality of the criminal process, namely, that once partners in a crime recognize that the 'jig is up,' they tend to lose any identity of interest and immediately become antagonists, rather than accomplices."

---

3. The Government contends, for the first time on appeal, that Biamby's former testimony was admissible under Rule 804(b)(3), authorizing admissions of statements against interest, because Biamby's former testimony inculpated him in the conspiracy to import cocaine. The Government's belated Rule 804(b)(3) contention raises

difficult issues, *compare, United States v. Gabay,* 923 F.2d 1536 (11th Cir.1991), *with United States v. Gonzalez,* 559 F.2d 1271, 1273 (5th Cir.1977), *and United States v. Atkins,* 618 F.2d 366, 372 (5th Cir.1980), which we need not resolve in light of our holding that Biamby's former testimony is admissible under Rule 804(b)(5).

*United States v. Gomez–Lemos,* 939 F.2d 326, 329–30 (6th Cir.1991) (citations omitted) (quoting *Lee,* 476 U.S. at 541, 544–45, 106 S.Ct. at 2062, 2063–64).

The remainder of our analysis focuses on the codefendants' cross-examination of Biamby. As previously indicated, their cross-examination was not introduced in evidence at Deeb's trial. For this reason, Deeb contends that this Court should not consider the fact that the codefendants cross-examined Biamby. He argues that Biamby's testimony should be treated as a grand jury witness's testimony. He points out, correctly, that this Court has yet to hold that any of the grand jury testimony it has reviewed had particularized guarantees of trustworthiness. *See, e.g., Lang,* 904 F.2d at 622–23; *Fernandez,* 892 F.2d at 982–83 (concluding that, even though Rule 804(b)(5) does not prohibit the admission of grand jury testimony thereunder, we would admit "only extraordinarily trustworthy grand-jury testimony ... as proof of the matter asserted" and we would not "sanction admission of proffered grand-jury testimony if its trustworthiness·and reliability were open to troubling doubt").[4] Also in Deeb's favor, the Supreme Court has generally held the uncross-examined statement of an alleged co-conspirator insufficiently trustworthy for admission under the Confrontation Clause. *See, e.g., Lee,* 476 U.S. at 541, 106 S.Ct. at 2062 (holding inadmissible against the defendant his co-conspirator's confession on the ground that the co-conspirator was not available for cross-examination); *Bruton v. United States,* 391 U.S. 123, 136, 88 S.Ct. 1620, 1628, 20 L.Ed.2d 476 (1968) (same). Thus, were we to treat Biamby's former testimony as though it has not been subject to cross-examination, we probably would hold its admission to be error.

 However, Biamby was cross-examined by Deeb's codefendants at their trial. That cross-examination was. available to Deeb who deliberately chose not to introduce it. We cannot allow a defendant to render former testimony inadmissible by the simple expedient of electing not to afford himself of the benefit of cross-examination that occurred when the testimony was taken. Deeb's contrary position would render Rule 804(b)(1) useless, and it is tantamount to saying that the prosecution cannot offer any testimony, even live testimony, against a defendant unless he deigns to cross-examine the witness. We refuse to accept such an absurd position. Instead, we turn to the task of deciding whether the cross-examination of Biamby that was available to Deeb rendered Biamby's testimony sufficiently trustworthy under the Confrontation Clause had Deeb chosen to utilize that cross-examination.

The principal purpose of cross-examination is:

> to challenge "whether the declarant was sincerely telling what he believed to be the truth, whether the declarant accurately perceived and remembered the matter he related, and whether the declarant's intended meaning is adequately conveyed by the language he employed."

*Roberts,* 448 U.S. at 71, 100 S.Ct. at 2541 (quoting Davenport, *The Confrontation Clause and the Co–Conspirator Exception in Criminal Prosecutions: a Functional Analysis,* 85 Harv.L.Rev. 1378 (1972)). In light of this purpose, we conclude that when testimony offered under the residual hearsay exception has been subject to cross-examination by someone other than the defendant, that cross-examination serves as the functional equivalent of cross-examination by the defendant if two conditions are met: 1) the cross-examination probed the witness's motive or inducement to lie; and, 2) the defendant has not shown that the absence of an opportunity personally to cross-examine the witness deprived him of an opportunity to present evidence that would have undermined the probative value of the witness's testimony against the defendant.

 Deeb contends that the codefendants' cross-examination was not adequate to demonstrate Biamby's motive to lie about Deeb's involvement in the cocaine importation conspiracy. Deeb points out that Biamby had a motive to minimize his own role in the scheme to import cocaine by implicating

---

4. This Court appears to have considered independent corroborating evidence in deciding *Fernandez* and *Lang,* both of which were decided before *Wright.* To the extent that those decisions turned on the existence of independent corroborating evidence, their analysis is inconsistent with *Wright,* 497 U.S. at 818, 1·10 S.Ct. at 3148.

Deeb as a principal. Deeb testified at his trial that he and Biamby were friends, that they had had legal business dealings in the past, and that, at the time of their arrest, Deeb was accompanying Biamby on a legitimate errand. Deeb argues that Biamby's testimony at the trial of the codefendants was a fabrication in which Biamby placed Deeb in the role actually played by Biamby in the conspiracy to import cocaine. Deeb contends that the codefendants had no motive to cross-examine Biamby about his allegedly false implication of Deeb as a principal in the importation scheme.

Although we recognize that the codefendants did not have precisely the same objectives as Deeb for discrediting Biamby, we believe the objectives of at least one of the codefendants were sufficiently similar to Deeb's that his cross-examination could and did probe Biamby's motive or inducement to lie. The transcript of the codefendants' trial reveals that Biamby was vigorously cross-examined by counsel for Abelardo Munera–Cadavid. Biamby's testimony implicated Cadavid, along with Deeb, as a principal conspirator in the importation scheme. In his cross-examination of Biamby, Cadavid's counsel established that Biamby had been heavily involved in narcotics trafficking since 1983 and that the terms of Biamby's plea agreement presented him with a strong motive to falsely inculpate Deeb and Cadavid. Also, Cadavid's counsel brought out the fact that Biamby had pled guilty to only one count of a five-count indictment, each count of which carried a 15 to 40–year term of imprisonment, and that the Government had agreed to dismiss the remaining counts against Biamby if he cooperated by testifying. Cadavid's counsel asked Biamby the following about the consequences of his plea agreement:

Q. So instead of looking at a potential of 240 years, anywhere from 90 to 240 years[,] by your coming into this court and testifying, you knocked that down [to] anywhere from 15 to 40 years, is that correct?

A. Sir, this is my plea agreement.

Q. Well, that's what your plea agreement says?

A. Yes, sir.

Q. And, as a matter of fact, it even goes further. It also states in your plea agreement—I am referring to the 5th paragraph—that ... the United States prosecutor ... has the right to evaluate and make decisions about how your testimony went, you are aware of that, aren't you, sir?

A. Yes, sir.

Q. And that the Government, the prosecutor[,] can come before the court and ask the judge to even give you less than the 15 years, depending on how you testify, is that·correct?

A. Yes, sir.

Q. And you are aware in paragraph number 6 that the Government prosecutor has the right to make a recommendation as to the quantity and quality of your punishment. That's what it says there, is that correct?

A. Yes, sir.

Q. So obviously one of your motives is that you want to testify. You want to impress [the prosecutor]. You want to do a good job so that hopefully [the prosecutor] will come to court at the time of your sentencing and say, "Judge, Serge Biamby did a great job for us and we want you to go below 15 years."

I mean, that's what you are hoping for, isn't that correct, in all fairness?

A. Yes.

. . . . .

Q. ... [I]f you don't testify the way that [the prosecutor] expects you to testify or if he's not happy with your testimony, you don't have an agreement, do you?

. . . . .

A. I have to help myself.

Q. Exactly. You have to do whatever is necessary to help yourself, to save you from doing a long prison sentence, isn't that correct?

A. No, sir. I am telling the truth.

Q. Yes, sir. And your motive for testifying today is to get the least possible jail sentence that you can get, isn't that correct?

A. It's part of it and at the same time, telling the truth, sir.

This cross-examination by Cadavid, which was available to Deeb, is sufficient to demon-

strate Biamby's motive or inducement to lie. There is little or nothing Deeb could have added to that line of inquiry. The first prong of the test is satisfied.

The second part of our inquiry into the trustworthiness of Biamby's testimony concerns whether Deeb has shown that the absence of an opportunity to cross-examine Biamby cost Deeb an opportunity to present evidence to undermine the probative value of Biamby's testimony against him. Deeb maintains that he would have pursued five lines of questioning, not pursued by the codefendants, that would have undermined the probative value of Biamby's testimony against him. Deeb contends he would have cross-examined Biamby regarding: (1) the legitimate nature of his business relationship with Biamby; (2) inconsistencies between Biamby's former testimony and testimony given by Customs Agent Gonzalez as to the events surrounding Deeb and Biamby's arrest; (3) details of the importation procedure described by Biamby; (4) a statement Biamby allegedly made to Deeb, after their arrest, that Biamby had told the Government that Deeb was innocent; and (5) Biamby's health. All of the evidence that Deeb sought to establish with the suggested lines of inquiry either was or could have been established through other means. First, Biamby admitted at the codefendants' trial that he had met Deeb sometime before Deeb allegedly approached him about importing cocaine. Although further inquiry might have elicited testimony from Biamby about the legitimate nature of his business relations with Deeb, there is no indication that such testimony would have conflicted in anyway with Biamby's implication of Deeb as a principal in the cocaine importation conspiracy. Further, when Deeb had an opportunity at Biamby's deposition to inquire into the legitimate nature of their business relations, he posed no questions regarding those dealings. Second, any inconsistencies between Biamby's and Gonzalez's versions of the events surrounding Deeb and Biamby's arrest was readily apparent. Third, Deeb could have discredited Biamby's description of importation procedures through means other than cross-examination of Biamby. Fourth, Biamby's alleged statement that Deeb was innocent could likewise be introduced through means other than

cross-examination of Biamby. Finally, Deeb questioned Biamby extensively about his health at the deposition, which was admitted at trial.

For these reasons, we conclude that the codefendants' cross-examination of Biamby afforded his former testimony the particularized guarantees of trustworthiness required for admission under the Confrontation Clause.

## IV. CONCLUSION

We conclude that Biamby's former testimony had circumstantial guarantees of trustworthiness necessary for admission under 804(b)(5) and that its admission did not violate Deeb's rights under the Confrontation Clause. Accordingly, we AFFIRM Deeb's conviction.