151 F.3d 1034
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Manuel A. TELLECHIA, Defendant-Appellant.
 No. 97-1984.
 United States Court of Appeals, Seventh Circuit.
 Argued Jan. 23, 1998.
Decided Aug. 10, 1998.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 87 CR 557.
 Before Hon. WILLIAM J. BAUER, Hon. MICHAEL S. KANNE, Hon. DIANE P. WOOD, Circuit Judges.
 ORDER
 MORAN, Judge.
 
 
 1
 Whatever else one might say about Manuel Tellechia, one thing is clear: he was no small-time operator. The present appeal arises out of his conviction for possession with intent to distribute more than 2,265 kilograms of cocaine, with a wholesale value in excess of $61 million (along with the usual associated convictions for conspiring to possess with intent to distribute, and aiding and abetting the same). According to press reports in 1987, when these drugs were confiscated at the Fulton Market in Chicago, this represented the largest cocaine bust in the nation's history, see Miami to New York to Chicago and Bust, Chicago Trib., July 31, 1987, at 1; Tr. at 1088. It remains the largest cocaine bust in the Northern District of Illinois to date, Tr. at 1088, and it undoubtedly continues to be among the larger seizures nationwide (though it has apparently fallen off the DEA's top ten list). While the bust leading to Tellechia's conviction involved weighty matters, his arguments on appeal all concern evidentiary decisions that the district court made. We conclude that in none of these instances did the district court abuse its discretion or deny Tellechia his constitutional rights to confront witnesses or testify in his own defense, and we therefore affirm.
 
 
 2
 * Most of the colorful facts behind this conspiracy are not particularly important for Tellechia's appeal, and so we offer here only a brief description of his activities. A fuller presentation can be found in United States v. Gonzalez, 933 F.2d 417 (7th Cir.1991), where we affirmed the convictions of several of Tellechia's accomplices. Tellechia's career in the illegal drug business seems to have begun (or possibly resumed) in 1983, when he began a marijuana smuggling operation with Alcides Cruz, a man he originally had met in a Cuban jail, and with Leonel Martinez. The Tellechia-Cruz-Martinez partnership shipped their marijuana by boat from the Bahamas to Florida. Over the years, the boats got bigger and so did the shipments. As of 1984, for example, one of their vessels was seized with 23,800 pounds of marijuana aboard. Eventually the Drug Enforcement Administration (DEA) got wind of the marijuana operation and broke it up; a few participants were convicted and began cooperating with the authorities.
 
 
 3
 Tellechia and Cruz both slipped through the DEA's net when the marijuana conspiracy was interrupted. Tellechia went to Florida, and Cruz went to Central America. The two then decided to move into the more lucrative cocaine business, using a plantain export business they had established in Honduras as a cover for their cocaine shipments. In 1986, Cruz recruited Jesus Ortiz for the cocaine work, and Roberto Ramirez (another veteran of the Cuban prisons) joined the group at around the same time. On a number of occasions thereafter, the group (which eventually included others as well) carefully packaged Columbian cocaine, tucked it into boxes of plantains, and shipped the cargo to Miami. The shipment that resulted in the present indictments began in July 1987. Federal officials discovered the plan to ship more than two and one-half tons of cocaine into Miami by a chance search of the plantain shipment as it was passing through U.S. Customs, and then set up surveillance of the warehouse in Miami to which the cocaine was to be delivered. An alert Ramirez spotted signs of disturbance, however, and warned Tellechia that the cocaine had been discovered. The two decided to divert the drugs, and engaged the services of Daniel Petroski to drive a truck filled with the cocaine up to New York. Petroski innocently obliged, and when DEA and Customs agents stopped him and informed him that his cargo contained contraband, he agreed to cooperate with the authorities. Once in New York he was told by Luis Gonzalez, a coconspirator, to take the load to Chicago. In Chicago, Petroski delivered the shipment to Vincente Chao. Tellechia was following the shipment, but upon learning that the drugs had been seized in Chicago, he fled to Detroit, and then from Detroit to Miami. The grand jury returned its indictment against the group in December 1987, with a superseding indictment returned on January 21, 1988. Most of Tellechia's coconspirators were convicted in 1988, see Gonzalez, supra. Tellechia managed to elude capture for a number of years, but he surrendered to federal authorities in April 1995. His trial took place in September 1996.
 
 II
 
 4
 As we indicated at the outset, the only points on appeal Tellechia has raised concern decisions of the district court about the admissibility of evidence. We review these decisions only for abuse of discretion, United States v. Johnson, 137 F.3d 970, 974 (7th Cir.1998); Otto v. Variable Annuity Life Ins. Co., 134 F.3d 841, 852 (7th Cir.1998). Furthermore, even if we were to agree with Tellechia that the district court erred in each of the respects he has noted, we would need to consider the harmless error doctrine, see Fed.R.Crim.P. 52(a). The evidence against Tellechia was overwhelming, as even he appears to concede implicitly. We would be hard pressed, therefore, to say that any of the district court's alleged errors relating to the admission of evidence would have affected Tellechia's substantial rights. That is enough in itself to require affirmance of the judgment below. Fed.R.Crim.P. 52(a); Johnson, 137 F.3d at 975; United States v. Moore, 115 F.3d 1348, 1358 (7th Cir.1997).
 
 
 5
 We therefore offer only a brief discussion of Tellechia's three points on appeal. First, he argues that the district court erred in admitting evidence of his prior marijuana trafficking pursuant to Fed.R.Evid. 404(b) and our four-part test under that rule. See Fox Valley Const. Workers Fringe Ben. Funds v. Pride of Fox Masonry and Expert Restorations, 140 F.3d 661, 667 (7th Cir.1998); United States v. Bursey, 85 F.3d 293, 297 (7th Cir.1996). The district court permitted both that evidence and evidence about an earlier cocaine shipment to be introduced, because Tellechia had argued that he did not know there were drugs hidden among the plantains. As Rule 404(b) permits, the evidence about the earlier marijuana shipments tended to show knowledge. The evidence also showed a direct link between Tellechia and his co-conspirators. We therefore find no abuse of discretion, and indeed no error, in this ruling of the district court. This conclusion makes it unnecessary for us to reach the government's alternative argument that Tellechia's lawyer should have renewed his objection to the 404(b) evidence after the district court ruled against Tellechia on his motion in limine to keep it out. Compare Favala v. Cumberland Engineering Co., 17 F.3d 987, 991 (7th Cir.1994) ("The majority of our cases indicate that the law in this circuit is that an unsuccessful motion in limine does preserve the issue for appeal .") (citations omitted) with United States v. York, 933 F.2d 1343, 1360 (7th Cir.1991) ("[A] party whose motion in limine has been overruled must object when the error the party sought to prevent is about to occur at trial.") (citations omitted).
 
 
 6
 Next, Tellechia argues that the district court should not have allowed the government to read into the record parts of the transcript of testimony Jesus Ortiz gave at the trial of Tellechia's co-conspirators in 1988 (which was when Tellechia would have been tried also if he had not become a fugitive). By the time of Tellechia's trial, Ortiz was dead, and the court admitted this evidence under the residual exception to the hearsay rule, Fed.R.Evid. 804(b)(5), since recodified to Fed.R.Evid. 807. Our statement of the proper standard of review in United States v. Singleton, 125 F.3d 1097 (7th Cir.1997), cert. denied, --- U.S. ----, 118 S.Ct. 898, --- L.Ed.2d ---- (1998) virtually disposes of this point:
 
 
 7
 We review the district court's findings as to the admissibility of evidence under Rule 804(b)(5) for abuse of discretion. A hearsay statement is admissible under Rule 804(b)(5) if the proponent can demonstrate that the declarant is unavailable and the statement contains circumstantial guarantees of trustworthiness equivalent to those inherent in the more specific exceptions provided under Rule 804(b)(1-4). The district court is granted considerable discretion in its determination of whether the hearsay statements contain the necessary circumstantial guarantees of trustworthiness.
 
 
 8
 Id. at 1106 (citations omitted). See also United States v. Doerr, 886 F.2d 944, 956 (7th Cir.1989) (listing factors to guide lower court's determination of whether circumstantial guarantees exist). Here, Ortiz was obviously unavailable. Previous testimony under oath in a criminal trial is as trustworthy as residual hearsay evidence is likely to get. Cf. United States v. Deeb, 13 F.3d 1532, 1537-38 (11th Cir.1994) (trustworthy especially when witness was cross-examined by other defendants); United States v. Shaw, 69 F.3d 1249, 1254 (4th Cir.1995) (trustworthy based on cross-examination and when witness was testifying under immunity or plea agreements, as Ortiz was); United States v. Panzardi-Lespier, 918 F.2d 313, 316 (1st Cir.1990); Fed.R.Evid. 804(b)(1) (allowing such testimony if the party against whom now offered could cross-examine the witness). The fact that Tellechia himself did not have the opportunity to cross-examine Ortiz at the earlier trial is immaterial, see Deeb, 13 F.3d at 1539-40, and, we note, Tellechia had only himself to blame for that circumstance. In any event, Ortiz was extensively cross-examined at that earlier trial, Tellechia's lawyer had the right to read that cross-examination to Tellechia's jury (a right he declined), and other witnesses corroborated Ortiz's testimony.
 
 
 9
 Tellechia also argues that, even if the Ortiz testimony was admissible under Rule 804(b)(5), his rights under the Confrontation Clause were violated by its use. Tellechia's theory here is that in the earlier trial both Ortiz and the defendants cross-examining him had an incentive to make Tellechia look like the kingpin of the operation. We do not disagree that in the abstract there might be a Confrontation Clause problem in use of an unavailable witness's testimony where evidence showed that witness was specifically biased against the defendant. In such a case, the particularized guarantees of trustworthiness that are required when a hearsay statement does not fall within a firmly rooted hearsay exception, see United States v. Dent, 984 F.2d 1453, 1462 (7th Cir.1993), would be missing. In this case, however, the record of Ortiz's testimony simply does not match up to Tellechia's story. See also Shaw, Deeb, supra (allowing similar evidence to be admitted despite the Confrontation Clause). We therefore find neither a constitutional problem nor an abuse of discretion in the district court's decision to permit the use of Ortiz's earlier testimony.
 
 
 10
 Last, Tellechia finds fault with the district court's ruling barring him from testifying about the alleged involvement of the Central Intelligence Agency in this drug conspiracy. The court found that the only conceivable use of such testimony, assuming for the sake of argument that there was some truth to Tellechia's allegation, would be to impeach witness Cruz. As such, however, it would be inadmissible impeachment evidence, because it would relate only to a collateral matter. United States v. Payne, 102 F.3d 289, 294 (7th Cir.1996); United States v. Kozinski, 16 F.3d 795, 805 (7th Cir.1994). The district court has considerable latitude in its ability to decide what impeachment evidence would be relevant, what would be collateral, and what would be cumulative. Like that court, therefore, we do not reach the question whether the CIA had anything to do with Tellechia's drug dealings, nor need we address anything in the "confidential" appendix he has filed with this court. Even if we agreed with Tellechia's allegations about the substance of the CIA's actions, we would find that the district court committed no abuse of discretion in excluding the evidence. Tellechia argues finally that by precluding him from testifying about the CIA's alleged involvement in this drug conspiracy the lower court infringed on his right to testify in his own defense. While we see no merit to this claim we lack jurisdiction to review it, since by failing to testify Tellechia has waived it. See Luce v. United States, 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984); United States v. Goldman, 41 F.3d 785 (1st Cir.1994) (applying Luce to Fed.R.Evid. 403).
 
 
 11
 We therefore AFFIRM the judgment of the district court.