**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Christopher CLARKE, Defendant–Appellant.**

**No. 92–5749.**

United States Court of Appeals, Fourth Circuit.

Argued June 10, 1993.

Decided Aug. 24, 1993.

Justin Michael Miller, Jacobovitz, English & Smith, Alexandria, VA, argued, for defendant-appellant.

Michael Edward Rich, Asst. U.S. Atty., Alexandria, VA, argued (Kenneth E. Melson, U.S. Atty., Leslie B. McClendon, Special Asst. U.S. Atty., on brief), for plaintiff-appellee.

Before ERVIN, Chief Judge, and MURNAGHAN and WILKINSON, Circuit Judges.

## OPINION

WILKINSON, Circuit Judge:

This case presents the question of whether prior testimony, inadmissible under Fed. R.Evid. 804(b)(1), nonetheless can be admitted under 804(b)(5) if it has equivalent guarantees of trustworthiness. We hold that it can, and accordingly affirm the judgment of the district court.

### I.

At the time of the relevant events, Christopher Clarke and Jane Latimer lived in Norwalk, Connecticut. Michael Clarke, brother of the appellant, lived in Durham, North Carolina. In early 1992, Latimer made several trips to Durham, transporting a toolbox between the brothers. On April 6, 1992, Christopher Clarke offered Latimer $1,000 to drive to Durham; Latimer agreed. Clarke had the money and a Toyota rental car delivered to Latimer that evening. The toolbox was in the trunk of the Toyota.

On April 7, Virginia State Trooper Mark Wilkinson observed the Toyota parked in a rest area off I–95 in Prince William County. He approached the vehicle and informed Latimer that the headlights were on. Wilkinson asked her if she owned the car; she replied that she did not and showed him a rental agreement. That agreement was for a Ford, however, and it was not leased to Latimer.

Wilkinson asked Latimer's consent to search the vehicle, which she gave. When

Wilkinson opened the trunk of the vehicle, he noticed that the spare tire had been removed from the wheelwell, and he found the toolbox there. Latimer denied ownership of the toolbox. Lifting up the top corner of the locked toolbox, Wilkinson observed a brown paper bag. He pried the box open and removed the bag, which contained 567.8 grams of crack cocaine.

Latimer was arrested. Pursuant to an arrangement between Latimer and the authorities, Latimer then called Michael Clarke and the two agreed to meet at a Durham motel. Latimer delivered the toolbox to Michael, and agents arrested him.

Michael Clarke was indicted in the Middle District of North Carolina for possession with intent to distribute cocaine base. He moved to suppress the crack cocaine. At his suppression hearing, Michael testified that he had directed his brother Christopher to purchase the toolbox and arrange for Latimer to deliver the cocaine.

Christopher Clarke was indicted for conspiracy with intent to distribute, and possession with intent to distribute, fifty grams or more of cocaine base. At Christopher Clarke's trial, Michael Clarke refused to testify, and the district court declared him unavailable. The district court found that Michael Clarke's testimony from his suppression hearing had "a high degree of reliability and trustworthiness" because "he had no motive to lie at that hearing or to implicate his brother for any ulterior purpose" and that the statement was "more probative on the point for which it [was] offered than any other evidence." Accordingly, over appellant's objection, it admitted the testimony under Fed.R.Evid. 804(b)(5). Christopher Clarke was convicted on both counts of the indictment. He now appeals.

## II.

■ Michael Clarke's testimony from his suppression hearing was clearly inadmissible under Fed.R.Evid. 804(b)(1), which allows the admission of prior testimony only when "the party against whom the testimony is now offered ... had an opportunity and similar motive to develop the testimony by direct,

cross or redirect examination." Appellant had no such opportunity here. The district court, however, admitted the testimony under the residual hearsay exception. Fed. R.Evid. 804(b)(5). Rule 804(b)(5) is available for "[a] statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness." Appellant asks us to construe "not specifically covered" narrowly, limiting 804(b)(5) to cases in no way touched by one of the four prior exceptions. According to appellant, admitting testimony that was a "near miss" under 804(b)(1) would undermine the protections of the evidentiary rules, as well as violate the Sixth Amendment's Confrontation Clause.

We disagree. Appellant's view of "not specifically covered" would effectively render 804(b)(5) a nullity. The plain meaning, and the purpose, of 804(b)(5) do not permit such a narrow reading. We believe that "specifically covered" means exactly what it says: if a statement does not meet all of the requirements for admissibility under one of the prior exceptions, then it is not "specifically covered." *United States v. Fernandez*, 892 F.2d 976, 981 (11th Cir.1989). This reading is consistent with the purposes of 804(b)(5). That rule rejects formal categories in favor of a functional inquiry into trustworthiness, thus permitting the admission of statements that fail the strict requirements of the prior exceptions, but are nonetheless shown to be reliable. If we were to adopt appellant's reading of the rule, we would deprive the jury of probative evidence relevant to the jury's truth-seeking role.

■ Our holding that Michael Clarke's testimony from the suppression hearing is admissible under 804(b)(5) is buttressed by cases admitting similar evidence. Grand jury testimony, like Michael Clarke's testimony from his suppression hearing, is prior testimony not subject to cross examination by the defendant, and thus inadmissible under 804(b)(1). Finding other guarantees of trustworthiness, however, this circuit has affirmed on a number of occasions the admission of grand jury testimony under 804(b)(5). *United States v. Murphy*, 696 F.2d 282, 286 (4th Cir.1982); *United States v. Walker*, 696

F.2d 277, 281 (4th Cir.1982); *United States v. Garner*, 574 F.2d 1141, 1144 (4th Cir.1978); *United States v. West*, 574 F.2d 1131, 1136 (4th Cir.1978).[1] Other circuits have reached the same result. *See, e.g., United States v. Barlow*, 693 F.2d 954 (6th Cir.1982); *United States v. Boulahanis*, 677 F.2d 586, 589 (7th Cir.1982); *United States v. Carlson*, 547 F.2d 1346, 1354–55 (8th Cir.1976). In addition, this circuit and others have admitted evidence under the residual exceptions when that evidence was inadmissible under one of the specified exceptions. *See, e.g., United States v. Simmons*, 773 F.2d 1455, 1458 (4th Cir.1985) ("Although we cannot accept the government's argument that [ATF] forms are admissible as business records under Rule 803(6), we agree with the government that the forms are admissible under Rule 803(24).") (footnote omitted); *United States v. Hitsman*, 604 F.2d 443, 447 (5th Cir.1979) (college transcript inadmissible under 803(6), admitted under 803(24)).

The doctrine that a "near miss" under a specified exception somehow renders evidence inadmissible under a residual exception promises much litigation over how close a statement can come to one of the specified exceptions before it is rendered inadmissible under 804(b)(5) as well. We think that this litigiousness is contrary to the inquiry established by the residual exception, which focuses on whether the statement has "equivalent circumstantial guarantees of trustworthiness." Both litigants and courts spend their time more productively in analyzing the trustworthiness of the particular statement, rather than debating the abstract question of "How close is too close?" to a specified hearsay exception. As noted by the Third Circuit, the "near miss" theory "puts the federal evidence rules back into the straightjacket from which the residual exceptions were intended to free them." *In re Japanese Elec.*

*Prod. Antitrust Litig.*, 723 F.2d 238, 302 (1983), *rev'd on other grounds, Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 580, 106 S.Ct. 1348, 1352, 89 L.Ed.2d 538 (1986). To adopt the "near miss" theory would create an odd situation where testimony that was equally trustworthy would be distinguishable based merely on its proximity to a specified exception. For instance, in *United States v. Ellis*, 951 F.2d 580 (4th Cir.1991), this circuit approved the admission of the statement made by a later-deceased witness pursuant to a plea agreement under 804(b)(5), even though that statement was very different from any of the specified exceptions. Given our holding in *Ellis*, it would contradict common sense to exclude equally reliable testimony here simply because it fell closer to one of the specified exceptions. We thus reject the "near miss" theory of interpreting Fed.R.Evid. 803(24) and 804(b)(5).

■ Instead, we focus on whether Michael Clarke's testimony from the suppression hearing had "equivalent circumstantial guarantees of trustworthiness." The guarantees are not identical to those in 804(b)(1), but they are in their totality equivalent, which is what the language of 804(b)(5) requires. In this case, the inquiry into trustworthiness aligns with the inquiry demanded by the Confrontation Clause, which requires courts to examine the "totality of the circumstances that surround the making of the statement" for "particularized guarantees of trustworthiness." *Idaho v. Wright*, 497 U.S. 805, 822, 110 S.Ct. 3139, 3150, 111 L.Ed.2d 638 (1990).[2]

The circumstances of Michael Clarke's testimony provide such guarantees. Michael Clarke was questioned at the suppression hearing by his own counsel, and he was cross-examined by a government attorney. *See Ellis*, 951 F.2d at 583 (statement reliable

---

1. To the extent that those cases rely upon the presence of other corroborating evidence to support the admissibility of grand jury testimony, they run afoul of the Confrontation Clause analysis of *Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). The district court, however, did not rely on such evidence in ruling upon the admissibility of the statement at issue here. *Wright* also did not address the question at issue in this case—the relationship of the specific hearsay exceptions to the residual exceptions. The grand jury decisions noted above saw no conflict.

2. This inquiry is unnecessary for "firmly rooted" hearsay exceptions, *see Wright*, 497 U.S. at 815, 110 S.Ct. at 3146, but the residual hearsay exception is not firmly rooted. *Ellis*, 951 F.2d at 583 n. 1.

because made in presence of witness' attorneys and government agents). A contemporaneous transcript was prepared of his statement, which he made voluntarily while under oath. *See id.* (statement reliable because contemporaneously recorded and made voluntarily). Michael Clarke knew that his statement could not be used against him at trial, which removed any incentive he might have had to lie to avoid conviction for cocaine distribution. Moreover, if he had lied, he could have been prosecuted for perjury. *See id.* (statement reliable because plea agreement required witness to be truthful with investigators). Finally, Michael Clarke did not need to implicate his brother in the transportation of cocaine to establish standing to challenge the search of the Toyota—he could have simply referred to an anonymous source in Norwalk. *See United States v. Accetturo,* 966 F.2d 631, 636 (11th Cir.1992) (focusing on lack of motive to fabricate). Clearly, appellant has identified no reason for his brother to have falsely implicated him at the suppression hearing, and we can discern none. Under these circumstances, the district court did not err in admitting a statement that had the ring of reliability about it.

### III.

■ Appellant's remaining claims may be briefly addressed. Appellant contends that the car search by Trooper Wilkinson violated the Fourth Amendment. We think, however, that when Clarke hired Latimer to transport the toolbox to his brother, he took the risk that Latimer would consent to a search of the car and the toolbox. We need not address whether the loan of an automobile to another person invests that individual with authority to consent to the search of every item in a car. Where the very purpose of retaining Latimer was to transport drugs in a container, Latimer plainly possessed authority to consent to a search of that container. It makes no difference that the toolbox was locked since the courier was well aware of its contents and hid the box in the wheelwell of the car. Finally, we think the officer in this case reasonably construed Latimer's consent to extend to an item over which she plainly possessed a right of access and control. *See United States v. Matlock,* 415 U.S.

164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974).

■ Clarke's remaining challenges to evidentiary rulings of the district court are without merit. He argues that his Confrontation Clause rights were violated by the admission of an incriminating statement made by a nontestifying codefendant, Monique Christie. *Bruton v. United States,* 391 U.S. 123, 126, 88 S.Ct. 1620, 1622, 20 L.Ed.2d 476 (1968). Clarke's name was redacted from the statement, *see Richardson v. Marsh,* 481 U.S. 200, 211, 107 S.Ct. 1702, 1709, 95 L.Ed.2d 176 (1987), but the prosecution's opening statement identified Clarke as the "friend" mentioned in Christie's statement. In light of our ruling on Michael Clarke's testimony, Christie's statement was plainly cumulative, and any error with regard to it was harmless beyond a reasonable doubt.

Finally, on his sentencing challenge, Clarke is bound by his stipulation to the weight of the cocaine.

### IV.

For the reasons given above, the judgment of the district court is

AFFIRMED.