United States Court of Appeals

FOR THE EIGHTH CIRCUIT

_____

No. 96-1246
_____

United States of America,       *
                                 *
          Appellant,             *
                                 *   Appeal from the United States
     v.                          *   District Court for the Northern
                                 *   District of Iowa.
Donald Lee Earles and            *
Catherine Papajohn,              *
                                 *
          Appellees.             *

_____

Submitted: January 16, 1997

Filed: May 8, 1997
_____

Before RICHARD S. ARNOLD, Chief Judge, ROSS, and BEAM, Circuit Judges.
_____

BEAM, Circuit Judge.

The government appeals the district court's judgment of acquittal in favor of defendants Donald Lee Earles and Catherine Papajohn. We reverse.

## I.  BACKGROUND

On October 24, 1991, a grand jury indicted Donald Lee Earles (Earles) and Catherine Papajohn (Papajohn) for their roles in the burning of the Countryside IGA in Sloan, Iowa. Count One of the indictment charged Earles with maliciously damaging and destroying

the grocery store and Papajohn with aiding and abetting that destruction. The indictment further charged Earles and Papajohn with: (1) devising a scheme to defraud St. Paul Fire and Marine Insurance Company (St. Paul) (Counts Two and Three); (2) laundering the proceeds received from the mail fraud (Count Four); and (3) conspiring to commit an offense against the laws of the United States, i.e., mail fraud and money laundering (Count Five). The indictment also sought the forfeiture of approximately $188,665.00, the amount received as proceeds of the defendants' allegedly unlawful activities.

Prior to the indictment, Earles's son Donald Scott Earles (Donnie) testified before the grand jury three times.[1] During Donnie's first grand jury appearance, he stated that he did not know who burned the Countryside IGA, but that he would not put it past his father and Papajohn to do such a thing. At his second grand jury appearance, Donnie admitted to knowing more facts about the burning of the IGA and testified to those facts in great detail. At his third appearance, Donnie stated that he would not comment further on the fire or testify against his father or Papajohn, his father's girlfriend.

The testimony Donnie gave during his second grand jury appearance can be summarized as follows. Earles told Donnie on the

---

[1]Earles, Papajohn, Donnie and another individual had previously been the subject of an investigation into a mail fraud scheme in which they allegedly sold non-existent propane tanks, bailing wire and twine to farmers. United States v. Earles, 955 F.2d 1175 (8th Cir. 1992). Trial of that matter resulted in Earles's conviction and Papajohn's acquittal. Id. at 1177. In exchange for being permitted to enter a guilty plea to conspiracy to commit mail fraud, Donnie agreed to cooperate with the government in several matters under investigation, including the burning of the IGA. Donnie's grand jury appearances were pursuant to that plea agreement.

day of the fire that he planned to burn the IGA, had unsuccessfully attempted to do so the night before, and would try again that night. Earles explained that he and Papajohn had stockpiled lighter fluid in the store in preparation for the fire. On the night of the fire, Donnie was very nervous for his father and hung around the store until his father made him leave. After leaving the store, Donnie parked his car at Papajohn's residence and walked back to the IGA. At one point in the evening, Donnie remembers waving to a local police officer who was patrolling the area. Earles told Donnie that he and Papajohn wanted to be rid of the IGA and needed the money from the insurance to pay off their debts and start over again. After the fire, Earles told Donnie that he had barely been able to get out of the store because the lighter fluid ignited so quickly.

Earles and Papajohn filed numerous pretrial motions. The district court granted Papajohn's motion for severance and her case proceeded to trial. At that trial, Donnie refused to testify and stated that he was asserting his privilege against self-incrimination. Despite the government's grant of use immunity for his testimony and the district court's explanation that such immunity rendered his claim of Fifth Amendment immunity unavailing, Donnie continued to refuse to testify at trial, explaining that he did not want to testify against his father or Papajohn. The district court held Donnie in contempt and jailed him for his failure to testify. After granting a continuance, the district court explained that a mistrial would be granted if Papajohn agreed to be tried together with Earles. Papajohn agreed and the district court declared a mistrial.

At the subsequent joint trial of Earles and Papajohn, Donnie again refused to testify, in spite of the intervening jail time and another grant of immunity. The district court declared Donnie an

unavailable witness and allowed the government to read to the jury redacted portions from all three of the transcripts of Donnie's grand jury testimony, over defendants' objection.

In addition to Donnie's testimony, a local deputy sheriff testified that he had observed Earles and Donnie entering and exiting the IGA and a nearby building around 1:00 a.m. on the night of the fire. Because the officer was suspicious of the late night activity, he drove by the store again later that night. At that time, he followed the men's vehicle to Papajohn's residence where they entered through the garage. Still later that same morning, the officer received the call regarding the fire at the IGA.

The government also presented evidence that the fire investigators had concluded that arson was the cause of the fire. The investigators agreed that the fire was incendiary in origin and that a flammable liquid had been used as an accelerant. In addition, the government presented evidence that Papajohn had been experiencing financial difficulty and was behind in her payments to creditors and vendors, including six months behind in payments on a secured note for the IGA inventory. Further evidence showed that Papajohn processed her proof of loss with St. Paul through the mail. Papajohn, in return, was sent checks from St. Paul totaling $188,665.00 in settlement of her claim.

The jury convicted Earles of one count of arson, two counts of aiding and abetting the crime of mail fraud, and one count of conspiracy. Papajohn was convicted of one count of aiding and abetting arson, two counts of mail fraud, and one count of conspiracy. After trial, defendants moved for a judgment of acquittal or, in the alternative, a new trial. They contended that the district court erred in allowing Donnie's grand jury testimony into evidence and that the government's evidence, without the grand

jury testimony, was insufficient to support the convictions.  The district court agreed and entered a judgment of acquittal.  It denied defendants' alternative motions for a new trial.  The government appeals, arguing that the grand jury testimony was properly admitted and, if not, that the defendants should be retried.

## II.  DISCUSSION

### A.  Admission of Grand Jury Testimony

As indicated, after Donnie refused to testify, the government offered portions of Donnie's grand jury testimony into evidence.  The defendants objected, arguing that such testimony was inadmissible hearsay.  The district court first determined that Donnie was an unavailable witness due to his continuing refusal to testify despite court orders to do so.  Fed. R. Evid. 804(a)(2).  The district court then determined that although Donnie's grand jury testimony was not admissible under the former testimony exception to the hearsay rule, because it was not subject to cross examination, Federal Rule of Evidence 804(b)(1); <u>United States v. Salerno</u>, 505 U.S. 317, 321-22 (1992), it was admissible under the residual hearsay exception, Federal Rule of Evidence 804(b)(5).  The  district court later determined that the admission of the grand jury testimony was error.  We find, however, that Donnie's testimony was admissible under Rule 804(b)(5).

Rule 804(b)(5), considered the residual or "catch-all" exception to the hearsay rule, provides in relevant part:

> A statement <u>not specifically covered by any of the foregoing exceptions</u> but having equivalent circumstantial guarantees of trustworthiness, [is admissible] if the court determines that (A) the statement is offered as

> evidence of a material fact; (B) the statement is more
> probative on the point for which it is offered than any other
> evidence which the proponent can procure through reasonable
> efforts; and (C) the general purposes of these rules and the
> interests of justice will best be served by admission of the
> statement into evidence.

Fed. R. Evid. 804(b)(5) (emphasis added). The district court held that Donnie's grand jury testimony, as former testimony, was "specifically covered" by another exception to the hearsay rule, namely section 804(b)(1) and was, therefore, inadmissible under the catch-all exception. United States v. Earles, No. CR 91-4016-DEO, order at 11 (N.D. Ia., Dec. 29, 1995) (citing United States v. Vigoa, 656 F. Supp. 1499, 1504 (D.N.J. 1987), aff'd without opinion, 857 F.2d 1467 (3d Cir. 1988)). In so holding, the district court committed reversible error.

The meaning of the catch-all's "specifically covered" language has caused considerable debate. See, e.g., McKethan v. United States, 439 U.S. 936 (1978) (Justices Stewart and Marshall dissenting from the Court's denial of writs of certiorari and contending that the Court should resolve the circuit split on this issue). However, the majority of circuit courts have held that the phrase "specifically covered" means only that if a statement is admissible under one of the prior exceptions, such prior subsection should be relied upon instead of subsection (b)(5). If, on the other hand, the statement is inadmissible under the other exceptions, these courts allow the testimony to be considered for admission under Rule 804(b)(5). United States v. Marchini, 797 F.2d 759, 763 (9th Cir. 1986) (compiling cases); see United States v. Deeb, 13 F.3d 1532, 1536-37 (11th Cir. 1994); United States v. Clarke, 2 F.3d 81, 84 (4th Cir. 1993); United States v. Guinan, 836 F.2d 350, 354 (7th Cir. 1988).

This court has previously validated the use of grand jury testimony under Rule 804(b)(5), although without discussing the meaning of the rule's "specifically covered" language. United States v. Carlson, 547 F.2d 1346, 1355 (8th Cir. 1976). In that case, we affirmed the district court's use of Rule 804(b)(5) to admit a declarant's prior grand jury testimony. Id. Here, in declining to follow Carlson, the district court stated that "the law surrounding this issue has been more fully developed since 1976" and that it was thus not "inappropriate" to distinguish the Carlson case.[2] United States v. Earles, order at 15. To the contrary, we reaffirm our holding in Carlson and hold that if a statement is inadmissible under a prior hearsay exception, the statement may nonetheless be considered for admission under the catch-all exception.[3]

---

[2]The district court also found that the Supreme Court's decision in United States v. Salerno compelled this result. Salerno, 505 U.S. at 317. We disagree. The Salerno case contains no references to Rule 804(b)(5). It deals solely with the propriety of admitting grand jury testimony under Rule 804(b)(1), as former testimony. Id. at 321. Therefore, we do not believe that Salerno addressed the question presented in this case, much less compelled the result reached by the district court.

[3]We think that "specifically covered" means exactly what it says: if a statement does not meet the requirements for admission under a prior exception, then it is not "specifically covered" by that exception and can be considered for admission under the catch-all. We agree with the reasoning of the Eleventh Circuit:

"If a statement does not satisfy all of the requirements of Rule 804(b)(1), then it is not a statement 'covered by [one] of the foregoing exceptions' within the meaning of Rule 804(b)(5). We consider admissible those statements that are similar though not identical to hearsay clearly falling under one of the four codified exceptions, if the statements otherwise bear indicia of trustworthiness equivalent to those exceptions. The contrary reading would create an arbitrary distinction between hearsay statements that narrowly, but conclusively, fail to satisfy one of the formal exceptions, and those hearsay statements which do not even arguably fit into a recognized mold."

Deeb, 13 F.3d at 1536-37 (quoting United States v. Fernandez, 892 F.2d 976, 981 (11th Cir. 1990)).

-7-

To be admissible under the catch-all exception, the proffered statement must have circumstantial guarantees of trustworthiness. "In assessing the qualitative degree of trustworthiness of a particular statement, courts should inquire into the reliability of and necessity for the statement." Carlson, 547 F.2d at 1354. Donnie testified under oath and under penalty of perjury at the grand jury proceeding. He related facts of which he had personal knowledge, so the "possibility of faulty recollection was minimized." Id. Except to admit that he knew more than earlier stated, Donnie never recanted his testimony nor did any extrinsic evidence cast doubt on the accuracy of that testimony. In addition to its reliability, there was a substantial need for the testimony because Donnie was unavailable to testify at trial and there were no other persons, to the government's knowledge, who could testify about the events in question. Id. These facts adequately fulfill the catch-all's requirement that the statement bear circumstantial guarantees of trustworthiness.[4]

The other requirements of Rule 804(b)(5) are also satisfied in this case. As previously noted, Donnie was an unavailable witness. Fed. R. Evid. 804(a)(2). Donnie's testimony was evidence of a

---

[4]Furthermore, we note the similarities between Rule 804(b)(5)'s requirement of circumstantial guarantees of trustworthiness and the Confrontation Clause's requirement that a statement bear adequate indicia of reliability, discussed infra at 9. See Idaho v. Wright, 497 U.S. 805, 814 (1990); United States v. Woolbright, 831 F.2d 1390, 1397 (8th Cir. 1987). Donnie's statements meet Rule 804(b)(5)'s trustworthiness requirement for the additional reasons discussed in our Confrontation Clause analysis.

-8-

material fact in that it directly implicated Earles and Papajohn and showed their intent and plan. The facts were more probative than any other available evidence and there has been no indication that the prosecution could obtain the proof elsewhere. Furthermore, the interests of justice were served by the admission of this evidence. The government granted Donnie immunity in an attempt to secure his trial testimony, and only relied on the grand jury testimony after Donnie's continuing refusals to testify at trial. Also, because of the circumstantial guarantees of trustworthiness surrounding the testimony and its overall probative value, the admission of this evidence increased the likelihood that the jury would ascertain the truth about the cause of the fire. See Huff v. White Motor Corp., 609 F.2d 286, 295 (7th Cir. 1979). Finally, defendants Earles and Papajohn had notice of the prosecution's intent to use Donnie's grand jury testimony against them if Donnie refused to testify at trial. Therefore, we find that the grand jury testimony in this case is admissible under the catch-all exception.

This does not end our inquiry, however, because incriminating statements that are admissible under an exception to the hearsay rule are nonetheless inadmissible under the Confrontation Clause unless the prosecution either produces the declarant for cross-examination or demonstrates both that the declarant is unavailable and that the statement bears adequate indicia of reliability. Idaho v. Wright, 497 U.S. 805, 814 (1990). As the Supreme Court has stated, "[W]hen a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate 'indicia of reliability.'" Ohio v. Roberts, 448 U.S. 56, 66 (1980). This reliability requirement can be met where a statement either falls within a

firmly rooted hearsay exception or is supported by a showing of particularized guarantees of trustworthiness. Id.

Once again, we note that Donnie was clearly unavailable as a witness under Rule 804(a)(2). Next, assuming that no firmly rooted hearsay exception applies here, we must consider whether Donnie's testimony had particularized guarantees of trustworthiness. Such guarantees of trustworthiness must "be drawn from the totality of circumstances that surround the making of the statement and that render the declarant particularly worthy of belief." Wright, 497 U.S. at 820. However, evidence corroborating the truth of a hearsay statement is not relevant to a finding of trustworthiness. Id. at 822. Under these stringent requirements, we, nonetheless, find that Donnie's grand jury testimony was supported by guarantees of trustworthiness sufficient to warrant its admission without an opportunity for confrontation.

We note that Donnie's testimony was given under oath. Carlson, 547 F.2d at 1354. Although Donnie was at first reluctant to implicate his father, he eventually chose to explain the events surrounding the store burning, stating that he was only offering the testimony because it was the right thing to do. Furthermore, Donnie never recanted his inculpatory testimony or expressed belated views as to its accuracy. Id. Although he later refused to further implicate his father or Papajohn, Donnie never denied the truth of his earlier statements. Also, we think it unlikely that Donnie would implicate his father and Papajohn in a serious crime unless the story were true. See, e.g., United States v. Roberts, 844 F.2d 537, 546 (8th Cir. 1988) (stating it was unlikely that family member would testify falsely against another family member). Donnie's willingness to sit in jail instead of testifying against his father and Papajohn lends further credence to this

-10-

factor.  Id.  If Donnie's testimony would have exonerated his father, he would presumably have testified to that effect.

### B.  Judgment of Acquittal

We turn to the district court's grant of judgment of acquittal for the defendants.  A motion for judgment of acquittal should only be granted "where the evidence, viewed in the light most favorable to the government, is such that a reasonably minded jury must have a reasonable doubt as to the existence of any of the essential elements of the crime charged." United States v. Mundt, 846 F.2d 1157, 1158 (8th Cir. 1988).  See also United States v. Robbins, 21 F.3d 297, 299 (8th Cir. 1994); United States v. Pardue, 983 F.2d 843, 847 (8th Cir. 1993).  This standard allows the district court very limited latitude; it can neither weigh the evidence nor assess the credibility of witnesses.  Pardue, 983 F.2d 847 (citing Burks v. United States, 437 U.S. 1, 16 (1978)).  The test is the same for this court as for the district court.

A brief review of the evidence presented at trial shows that there was more than sufficient evidence to sustain the guilty verdicts.  The government introduced evidence that Papajohn's grocery store had not been doing well and that she was behind in her payments on the store.  There was further evidence that both Papajohn and Earles found the store to be a burden, desired to be rid of it, and had unsuccessfully tried to sell it. Donnie's testimony showed that Earles had planned to burn the store, a prior attempt had failed, and that the night Earles burned the store, he had barely been able to get out of the store safely because the lighter fluid burned so quickly.  Furthermore, the fire investigators determined the cause of the fire was arson and Earles and Papajohn were easily tied to that arson.  Additionally, there

was ample evidence of Papajohn's use of the mails to process and collect money for the insurance claim.  Based on all of the evidence presented at trial, we conclude that more than sufficient evidence was presented to sustain the guilty verdicts.  Therefore, the district court erred in granting defendants' motions for judgment of acquittal.

In light of our holding that Donnie's grand jury testimony was properly admitted, however, the district court correctly denied defendants' motions for a new trial on that ground.  We have considered the remainder of defendants' arguments and motions and find them to be without merit.

## III.  CONCLUSION

Because the district court erred in ruling the grand jury testimony should have been excluded and in issuing a judgment of acquittal for defendants, we reverse.  We remand this case to the district court for the reinstatement of the jury's verdict.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.