**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 96-4618

ROBERT DONNELL PARKS, a/k/a
Robert Earl,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Benson E. Legg, District Judge.
(CR-95-347-L)

Submitted: September 30, 1997

Decided: October 28, 1997

Before MURNAGHAN, WILKINS, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

William B. Purpura, Michael D. DeMartin, Baltimore, Maryland, for
Appellant. Lynne A. Battaglia, United States Attorney, Gregory
Welsh, Assistant United States Attorney, Robert R. Harding, Assis-
tant United States Attorney, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Robert D. Parks was convicted of murder in furtherance of a racketeering activity, in violation of 18 U.S.C.A. § 1959(a)(1) (West Supp. 1997); conspiracy to murder as part of a racketeering activity, in violation of 18 U.S.C.A. § 1959(a)(5) (West Supp. 1997); and conspiracy to distribute heroin, in violation of 21 U.S.C.A.§ 846 (West Supp. 1997). He appeals his convictions, challenging the admission of certain evidence. We affirm.

I

In the fall of 1993 and the winter of 1993-94, Joel Washington operated a heroin trafficking organization in Baltimore. Robert Parks (also known as Robert Earl) and Brenton Pullen were two of his subordinates, responsible for the street distribution of the drug. The organization sold several kilograms of heroin during this time period. On February 1, 1994, Washington met with Pullen and three others to settle a drug debt and sell additional heroin. Instead, Pullen shot Washington, and the group took most of the drugs and money from the transaction. Washington survived the assault, although word on the street was that he had died.

The next day, Washington instructed Parks to retaliate against the assailants. Parks agreed to do so. On February 2, 1994, Parks beeped Pullen several times. Pullen told Calvin Vaughn that Parks wanted to meet him and two others who had been involved in the Washington shooting, and that he was going to meet with Parks. Of Washington's assailants, only Pullen showed up at the meeting. Parks and another man, who has not been identified, shot Pullen several times in the head. Washington testified that Parks called him on the evening of February 2 and told him to watch the eleven o'clock news. Washington did so, and heard a report that Pullen had been found dead. Parks

2

later that night described the shooting to Washington. Washington gave Parks a BMW and quantities of drugs in payment for the murder.

In addition to the three counts for which he was convicted, Parks was indicted for the attempted murder of Michael Rubin, in furtherance of racketeering activity, in violation of 18 U.S.C. § 1959(a)(5); and use of a firearm in relation to Pullen's murder, in violation of 18 U.S.C.A. § 924(c) (West Supp. 1997). He was acquitted of those counts. Parks was sentenced to life imprisonment for murder and heroin distribution, and 120 months for conspiracy to murder, all to run concurrently.

II

Before trial, the Government, anticipating that certain witnesses might recant their grand jury testimony or claim a loss of memory of the events, alerted the court that it might move for admission into evidence of certain grand jury testimony pursuant to Fed. R. Evid. 801(d)(1). During direct examination by the Government, James Cromer spoke in a barely audible voice, and stated frequently that he could not recall matters about which he had testified to the grand jury. The district court allowed the prosecutor to ask Cromer a specific question and, if he denied memory, to attempt to refresh his recollection with the grand jury transcript. Frustrated by Cromer's lack of cooperation with this approach, the district court ruled Cromer unavailable and the grand jury transcript admissible under Fed. R. Evid. 804(b)(5). The prosecutor read the grand jury transcript aloud to the jury. Cromer then testified, somewhat equivocally, that his grand jury testimony was truthful. Defense counsel cross-examined Cromer, who admitted that he gave information to the Government hoping to gain more favorable treatment in his own criminal cases. Cromer also admitted that, while his testimony about Parks's drug dealing came from Cromer's transactions with him, his testimony that Parks was responsible for Pullen's death came only from rumor he had heard on the street.

Parks argues on appeal that the admission of Cromer's grand jury testimony violated both the Sixth Amendment Confrontation Clause and the residual hearsay exception, Fed. R. Evid. 804(b)(5). Under the

3

Sixth Amendment, the accused in a criminal prosecution has the right to be confronted by the witnesses against him. While there are occasions when certain hearsay statements are admissible, Maryland v. Craig, 497 U.S. 836, 847-48 (1990), before introducing such statements the prosecution must establish (1) that use of the hearsay is necessary due to the declarant's unavailability; and (2) that the hearsay bears sufficient "indicia of reliability." Ohio v. Roberts, 448 U.S. 56, 65-66 (1980). The trustworthiness of out-of-court statements is judged from the totality of the circumstances. Idaho v. Wright, 497 U.S. 805, 819-20 (1990).

Admission of evidence under the hearsay rule is reviewed for abuse of discretion. United States v. Ellis, 951 F.2d 580, 582 (4th Cir. 1991). To admit evidence under the residual hearsay exception, Fed. R. Evid. 804(b)(5), the district court must find that the declarant is unavailable and the statement has circumstantial guarantees of trustworthiness. In addition, the court must determine (1) the statement relates to a material fact; (2) the statement is more probative on the point for which it is offered than any other reasonably obtainable evidence; and (3) the interest of justice would be served. Here, Parks challenges only the statement's trustworthiness.

Parks admits that the disputed statements were made under oath, with a contemporaneous transcript, and that Cromer knew he was subject to prosecution for perjury if he lied before the grand jury. Statements that he made as to his involvement in drug trafficking were against his penal interests. These factors give the testimony a "ring of reliability." United States v. Clarke, 2 F.3d 81, 85 (4th Cir. 1993). Cromer was not subject to cross-examination during the grand jury proceedings, but the grand jurors were free to question him. "The nature of grand jury testimony thus provides some indicia of trustworthiness." United States v. McHan, 101 F.3d 1027, 1038 (4th Cir. 1996). Parks argues that the grand jury statement is made suspect by the facts that Cromer was trying to obtain favorable treatment from the government and was a heroin addict at the time, and that rumors formed the basis for much of his testimony. But all these factors were brought out on cross-examination at trial, so that the jury could weigh Cromer's motivation. Therefore, Parks's Sixth Amendment rights were adequately safeguarded, and the testimony was sufficiently trustworthy under the Constitution and Fed. R. Evid. 804(b)(5).

4

III

Calvin Vaughn, a participant in Washington's drug conspiracy, testified that he spent most of February 2, 1994, with Pullen. Over Parks's objection, Vaughn was permitted to testify that Pullen received several pages during the day, and that Pullen looked at the number several times and said that Robert Earl (aka Parks) was paging him. After Pullen spoke on the phone, he told Vaughn that Robert Earl wanted to meet with him. That evening, Vaughn testified, Pullen dropped him off and said he was going to see Robert Earl. Parks argues that these statements were inadmissible hearsay. The district court ruled the statements about the pages to be admissible as present sense impressions, Fed. R. Evid. 803(1), and as non-hearsay co-conspirator statements under Fed. R. Evid. 801(d)(2)(E). Pullen's statement that he was going to meet Earl was admitted as a statement of intent, Fed. R. Evid. 803(3), and under Fed. R. Evid. 801(d)(2)(E).

Parks argues that the statements in issue were not admissible under Fed. R. Evid. 801(d)(2)(E), because the Government never proved a conspiracy existed between Parks and Pullen on the day in question. He asserts that the conspiracy ended when Pullen tried to murder Washington, and that this action evidenced Pullen's intent to withdraw from the conspiracy.* The district court found that a conspiracy to distribute drugs existed before Washington was shot, and included Pullen and Parks. After the shooting, all the co-conspirators except Parks thought that Washington was dead, and Pullen intended to meet with Parks "with a view toward continuing the drug enterprise without Mr. Washington but with the group that had existed before." The district court found that there was no clear and definitive withdrawal, despite the fact that Pullen was part of the group that shot Washington.

Under Fed. R. Evid. 801(d)(2)(E), the court must conclude that a conspiracy existed that included the declarant and the party against whom the testimony is sought to be admitted, and that the statements at issue were made in the course of and in furtherance of the conspiracy. United States v. Neal, 78 F.3d 901, 905 (4th Cir.), cert. denied,

_____

*Parks does not dispute the other grounds on which the court admitted the evidence.

5

___ U.S. ___, 65 U.S.L.W. 3260 (U.S. Oct. 7, 1996) (No. 95-9410). Here, Washington testified that a conspiracy existed for the distribution of heroin, and that Pullen and Parks were members of the conspiracy. Pullen agreed to meet with Parks after the supposed death of Washington, and it is plausible that he perceived the purpose of the meeting to be to plan for the future of the conspiracy without Washington. Therefore, the district court's findings were not clear error, and the court did not abuse its discretion in allowing the testimony.

IV

Parks next argues that Vaughn's evidence deprived him of his due process rights. Parks did not raise this claim before the district court; therefore, we review it for plain error. United States v. Olano, 507 U.S. 725, 731-32 (1993).

Parks asserts that the admission of Pullen's out-of-court statements allowed Parks to be convicted on unreliable evidence, citing United States v. Houlihan, 92 F.3d 1271, 1282 (1st Cir. 1996), cert. denied, ___ U.S. ___, 65 U.S.L.W. 3559 (U.S. Feb. 18, 1997) (No. 96-1036). The First Circuit rejected the due process argument in Houlihan, ruling that "other evidence abundantly corroborates" the statements in question. Id. Parks argues that there is no evidence corroborating that Parks paged Pullen and arranged to meet with him that evening. But Parks's telephone number was in Pullen's pager, and Washington and another witness testified that the meeting did occur. Therefore, independent evidence corroborated the contested evidence, and admission of Pullen's statements was not error under a due process analysis.

V

Parks was indicted for the attempted murder of Michael Rubin in November 1993 for the purpose of maintaining his position in the drug enterprise, but was found not guilty. Vaughn testified about a phone conversation he had with Pullen concerning Rubin's shooting. Vaughn testified that, according to Pullen, Parks shot Rubin six times because Rubin had stolen some drugs. The district court ruled that the evidence was admissible under Fed. R. Evid. 801(d)(2)(E), as the conversation was in furtherance of the conspiracy.

6

Parks was acquitted of the attempted murder charge. The statements at issue relate only to that offense. If there was any error in admitting the testimony, it is harmless. The general rule recognizes that jurors follow instructions to consider each count separately. United States v. Sarin, 10 F.3d 224, 225 (4th Cir. 1993). Parks does not allege that they failed to do so in this case, or that the jury was not properly instructed. Therefore, any error was harmless.

Accordingly, we affirm Parks's conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

7